IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANICE LYNN ARAGON and
CELESTINO ARAGON, husband and wife,

        Plaintiffs,

v.                                                             CIV. No. 97-364 JP/WWD

OFFICERS MARTIN LOPEZ, BRENDA
TRUJILLO, and JOHN DOES I-V, inclusive,

        Defendants.

## MEMORANDUM OPINION AND ORDER

The subject of this Memorandum Opinion and Order is Defendants Martin Lopez and Brenda Trujillo's "Motion for Summary Judgment," [Doc. No. 22], filed February 23, 1998.  For the reasons stated below, the motion should be granted in part and denied in part.

As a preliminary matter, I note that Plaintiffs agree that Defendant Brenda Trujillo was not present at the time Plaintiffs were stopped by Defendant Lopez and that she should be dismissed as a defendant in this case.  Therefore, all claims against Defendant Trujillo should be dismissed with prejudice.  In addition, I note that Plaintiffs' First Amended Complaint, filed December 10, 1997, names the City of Santa Fe as a defendant in this case.  However, in my Memorandum Opinion and Order entered November 20, 1997, I dismissed all claims against the City with prejudice.  Plaintiffs may not now reassert their claims against the City.  Plaintiffs' claims against the City of Santa Fe should be dismissed.

**Background**

This case stems from the stop of the Plaintiffs by Defendant Lopez as Plaintiffs were driving in their recreational vehicle in Santa Fe. Defendant Lopez pulled the Plaintiffs over and conducted a "felony stop" in which he drew his gun with the safety in the "off" position, ordered Plaintiffs to get out of their camper with their hands in the air and to lie prone on the ground, and watched while another officer handcuffed them. Sometime after Defendant Lopez or some other officer placed the Plaintiffs inside separate police cars, it was determined that they were not the criminal suspects the police were seeking. The police then released Plaintiffs. The Plaintiffs' First Amended Complaint asserts claims under the Fourth and Fourteenth Amendments to the United States Constitution as well as claims of negligence, assault, battery, spoliation of evidence, intentional infliction of emotional distress, violation of the New Mexican Constitution, and negligent infliction of emotional distress. Defendant Lopez contends that he had a reasonable, articulable suspicion that the Plaintiffs had committed a felony and that he has qualified immunity for his actions.

**Summary Judgment Standard**

Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non- moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." Thrasher v. B& B Chemical Co., 2 F.3d 995, 996 (10th Cir. 1993). The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F. 2d 887, 891 (10th Cir. 1991). Once the movant meets

this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(quoting Fed. R. Civ. P. 56(e)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U. S. 574, 587 (1986).  Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, Harsha v. United States, 590 F. 2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case.  Celotex, 477 U. S. at 325.  In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Id. at 322.

## Analysis

The defense of qualified immunity shields government officials performing discretionary functions from liability for money damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, in assessing a claim of qualified immunity I must "determine the objective reasonableness of the challenged conduct by reference to the law clearly established at the time of the alleged constitutional violation."  Austin v. Hamilton, 945 F.2d 1155, 1160-61 (10th Cir. 1991).  Accord Anderson v. Creighton, 483 U.S. 635, 639 (1987).

In this case, the law is quite clearly established. The Supreme Court has held that even in the absence of probable cause, "a police officer can temporarily detain an individual suspected of criminal activity if the officer can point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" United States v. Perdue, 8 F.3d 1455, 1461 (10th Cir. 1993) (quoting Terry v. Ohio, 392 U.S. 1 (1968)). As the defendants point out, the Tenth Circuit has held that under certain circumstances police officers conducting a Terry stop may draw their weapons and handcuff the suspects without converting the stop into an arrest. See, e.g., Perdue, 8 F.3d at 1462; United States v. Merkley, 988 F.2d 1062, 1064 (10th Cir. 1993); United States v. Merritt, 695 F.2d 1263, 1273 (10th Cir. 1982). I also note that "[a]n official can violate the Constitution and still be protected by qualified immunity." Trujillo v.Simer, 934 F. Supp. 1217, 1224 (D. Colo. 1996). See also Hunter v. Bryant, 502 U.S. 224, 227 (1991)(stating that qualified immunity shields officers from suit for damages from unlawful arrest if reasonable officer could have believed arrest to be lawful in light of clearly established law and information arresting officers possessed); Malley v. Briggs, 475 U.S. 335, 341 (1986) (asserting that "the qualified immunity standard provides ample protection to all but the plainly incompetent or those who knowingly violate the law"). Qualified immunity provides officers with "protection from reasonable error because police should not always err on the side of caution out of fear of being sued." Trujillo, 934 F.Supp. at 1224. Thus, whether Officer Lopez actually violated Plaintiffs' rights under the Fourth Amendment is irrelevant if, at the time of his actions, Officer Lopez reasonably believed that he legally encountered and detained the Plaintiffs. Plaintiffs do not contest Officer Lopez' assertion that the law in this area is clear. Instead, Plaintiffs argue that Officer Lopez' behavior in conducting a felony stop of the Plaintiffs

4

was not objectively reasonable given the information available to him at the time.

The facts in this case, based upon the affidavits, depositions, and other admissible evidence on file, and taken in the light most favorable to the Plaintiffs, are as follows. On the evening of February 16, 1997 two armed robberies at two different Allsups convenience stores in Santa Fe, New Mexico were reported to the police. Defendant Lopez was ordered by dispatch to go to the site of the first robbery on St. Michael's Drive and was on his way there when the dispatcher informed him that a second armed robbery had occurred at another Allsups a few blocks away on Calle Lorca. The dispatcher then ordered Defendant Lopez to go to the site of the second robbery. When Lopez arrived at the Allsups on Calle Lorca, he was hailed by an Allsups security guard in the parking lot. In the meantime, Roman Solano, a customer who was inside Allsups during the crime, had chased the suspect out of the store and around a corner and saw him get inside a Datsun pickup truck and drive away heading north on St. Michael's drive and then turn left onto Calle Lorca. Parked next to the Datsun pickup was a blue camper or a blue pickup truck with a camper top, which also drove north on St. Michael's Drive past Calle Lorca toward's St. Vincent's hospital. After seeing the two vehicles depart, Solano returned to the front of the store where he saw the security guard talking to Officer Lopez.

As Solano approached the two, he heard the security guard tell Lopez that the suspect had driven off in the camper that was heading away from the store on St. Michael's Drive. As Lopez drove off in the direction indicated by the security guard, Solano shouted at him that the suspect was in a Datsun pickup truck, not a camper. There is no evidence that Lopez heard or did not hear Solano's admonishment. Lopez drove east on St. Michael's Drive in the direction indicated by the security guard when he came upon the Plaintiffs driving their recreational vehicle. He then

5

pulled Plaintiffs over and conducted a felony stop.  After witnesses from Allsups confirmed that the police had the wrong suspects, Plaintiffs were released.

Plaintiffs argue that Defendant Lopez should have known that Plaintiffs were not criminals because of their age and appearance, as well as the appearance of the recreational vehicle. However, Plaintiffs put forward no admissible evidence to support an argument that neither they nor their vehicle matched any description of the suspects known to Defendant Lopez at the time of the felony stop.  Plaintiffs may not defeat a motion for summary judgment on the bare assertion that Defendants should have known they were not the robbers.  Similarly, Plaintiffs argue that Lopez should not be entitled to qualified immunity because it was ultimately discovered that the armed robbery at Allsups was actually a larceny, not a felony armed robbery, and that a felony stop was therefore unreasonable.  However, there is no admissible evidence in the record to support an assertion that Defendant Lopez *knew* that he was investigating a larceny instead of an armed robbery at the time he stopped the Plaintiffs.  The conduct of police officers should be evaluated based on the information the officers possessed at the time of the challenged action, not on whatever facts come to light at a later time.

On the other hand, a genuine issue of material fact exists as to whether Officer Lopez reasonably believed that the Plaintiffs' recreational vehicle was involved in the crime.  Lopez testified in his deposition that the Allsups security guard pointed to Plaintffs' vehicle as the one containing the criminal suspects, (Defendants' Exhibit 1, pp.12, 44-45) and Roman Solano testified that he heard the security guard tell Defendant Lopez "It's that camper."  Defendant's Exhibit 5, pp. 15-16. However, there is no evidence in the record as to whether Lopez heard Solano shout "It's the Datsun.  It's that little truck."  In addition, Defendant Lopez stated that

when he first saw the Plaintiffs' recreational vehicle, it was on Calle Lorca making a right turn onto St. Michael's Drive.  Id. at pp.15, 44.  However, Plaintiff Jose Aragon, who was driving the recreational vehicle, has stated in his affidavit that he never turned onto or off of Calle Lorca.  Plaintiffs' Exhibit 1.  Finally, Roman Solano testified that the vehicle that left the scene of the crime was either a blue camper, id. at p.5, or a Chevy pickup with a camper on it.  Id. at p.9.  Mr. Solano testified that at the direction of the Allsups security guard, Defendant Lopez pursued that camper as it drove away on St. Michael's Drive.  Id. at pp. 15-19; Plaintiffs' Exhibit 6.  However, there is no testimony in the record about the appearance of the plaintiffs' recreational vehicle.  From this conflicting testimony and the absence of information in the record, it is impossible to determine whether Defendant Lopez had a reasonable basis to conclude that Plaintiffs were legitimate suspects.

A second genuine issue of material fact exists as to whether it was reasonable for Officer Lopez to continue to detain Plaintiffs after the felony stop had been completed.  Defendant Lopez testified that he did not hear any radio transmission informing him that the suspects were in a pickup truck rather than in a recreational vehicle.  Id. at p.31.  However, Plaintiff Jose Lopez has stated that he heard the radio dispatcher tell Defendant Lopez that "he was supposed to be chasing a Datsun pickup."  Plaintiffs' Exhibit 1 at p.2.  It will be up to a jury to determine if the radio dispatcher did so inform Defendant Lopez and, if so, whether it was reasonable for Lopez to continue to detain the Plaintiffs after receiving that information.

THEREFORE, IT IS ORDERED that the Defendants' "Motion for Summary Judgment," [Doc. No. 22] is GRANTED with respect to all claims against Defendants Brenda Trujillo and City of Santa Fe, and those claims will be DISMISSED WITH PREJUDICE.  The Motion for Summary Judgment is DENIED with respect to Defendant Martin Lopez.

_____
UNITED STATES DISTRICT JUDGE